**IN THE UNITED STATE DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **DANIEL WHITE**<br><br>            Plaintiff,<br><br>**v.**<br><br>**ROMSPEN MORTGAGE LIMITED PARTNERSHIP; ROMSPEN INVESTMENTS CORPORATION; CHRISTOPHER MILAM; ADAM ZARAFSHANI; AND PANACHE CONSTRUCTION AND DEVELOPMENT, INC.**<br><br>            Defendants. | Civil Action No: 1:21-cv-00517<br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff Daniel White, by and through his attorneys, brings this action against Defendants Romspen Mortgage Limited Partnership, Romspen Investments Corporation, Christopher Milam, Adam Zarafshani, and Panache Construction and Development, Inc. (collectively, "Defendants") in response to an egregious pattern of fraudulent conduct while acting as the trustees of Mr. White investing in property in Texas.

## BRIEF SUMMARY OF THE CASE

1.      This case is based upon Defendants' individual, collective, collusive and/or conspiratorial conduct, in utilizing a fraudulent "loan to own" scheme intended and calculated by Defendants, to rob Mr. White and his entities of an Austin property while simultaneously draining Mr. White's accounts by utilizing Defendants' trustee positions.

1

2.      Defendants exploited the builder/developer's knowledge of Plaintiff's financial and other affairs, position as Plaintiff's trustee, and builder/developer's position as the project's general contractor, in a collusive and conspiratorial effort to create a total failure of the development of the property and sabotage the sale of the property.

3.      Defendants fraudulently manufactured and then inflated the property's debt. Defendants then fraudulently pushed Mr. White and his assets towards bankruptcy, positioning themselves to take possession of multiple real estate and business assets owned by Mr. White as a lender bidder.

## PARTIES

4.      Plaintiff Daniel White (hereinafter "Mr. White"), at all times material hereto, is a Canadian citizen, residing in the Province of Alberta and was the vice president of Zen Garden GP, LLC.

5.      Defendant Romspen Mortgage Limited Partnership (hereinafter "Romspen LP") was, at all times material to this Complaint, an Ontario, Canada, limited partnership, formed under the laws of the Province of Ontario, with a registered head office located at 162 Cumberland Street, Suite 300, Toronto, Ontario.

6.      Defendant Romspen Investment Corporation (hereinafter "Romspen Corp.") was, at all times material to this Complaint, an Ontario-Canada corporation, duly formed and incorporated under the laws of the Province of Ontario, with a registered head office located at 162 Cumberland Street, Suite 300, Toronto, Ontario.

7.      At all times material hereto Defendants Romspen LP and Romspen Corp. (hereinafter "Romspen") and/or their agents, servants, employees, affiliates and/or other

representatives, acted in a fiduciary capacity and/or as trustees for Plaintiffs Mr. White and Zen Garden or any other of Mr. White's assets, as more fully and specifically set forth hereinafter.

8.      At all times material hereto, defendant Romspen LP and Romspen Corp. acted by and through the actions of its managers, agents, servants, employees, affiliates and/or other representatives, and for whose conduct Romspen LP and Corp. remained responsible and/or liable.

9.      At various times material to this Complaint, as more fully set forth hereinafter, Romspen LP and Corp. and its agents, managers, servants, employees, affiliates and/or other representatives colluded and/or conspired, one with any one or more of the other Defendants, against the financial and/or business interests of Plaintiff's and/or any other of Mr. White's assets.

10.     Plaintiff is informed and believes that Defendant Christopher Milam (hereinafter "Defendant Milam") is a citizen and resident of the State of Texas.

11.     Plaintiff is informed and believes that Defendant Adam Zarafshani (hereinafter "Defendant Zarafshani") is a citizen and resident of the State of Texas residing at a last known address of 4101 Cat Mountain Road, Austin, Texas.

12.     Defendant Panache Construction and Development, Inc. (hereinafter "Panache") is a Texas corporation with a registered head office located at P.O. Box 26539, Austin, Texas.

13.     At all times material to this Complaint, Defendant Zarafshani was a principal, officer and/or director, as well as the controlling interest and/or shareholder, decision maker, agent, servant, employee, manager, and/or other representative of Panache.

14.     At all times material hereto, Defendant Zarafshani and Panache acted individually and/or in concert one with the other, with respect to transactions involving the Plaintiffs and/or any other of Mr. White's assets.

COMPLAINT

15.     At various times material to this Complaint, as more fully set forth hereinafter, Defendant Zarafshani and Panache and their agents, managers, servants, affiliates, employees, and/or other representatives colluded and/or conspired, one with any one or more of the others, against the financial and/or business interests of Plaintiffs and/or any other of Mr. White's assets.

16.     At various times material to this Complaint, as more fully set forth hereinafter, Defendants together colluded and/or conspired, one with the other, against the financial and/or business interests of Plaintiffs and/or any other of Mr. White's assets.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a). The amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff, Mr. White, is a Canadian citizen and resident. Defendant Panache is a corporation incorporated under the laws of Texas and is authorized and doing business through the State of Texas. Further, Defendants Zarafshani and Milam are both residents and citizens of the State of Texas.

18.     This Court also has subject matter jurisdiction over Plaintiff's federal civil RICO claim pursuant to 28 U.S.C. § 1331.

19.     This Court has supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(a).

20.     The contract and property which are the primary subjects of this lawsuit pertain to dealings between the parties in the State of Texas, applies Texas law to its construction, and specifies Texas as the proper place for venue. Tex. Gov't Code § 24.007; Tex. Const. Art. V, § 8; Tex. Civ. Prac. & Rem. Code § 15.011; Tex. Civ. Prac. & Rem. Code § 15.004.

4

COMPLAINT

21.     The Austin Property located at 501 Ed Bluestein Blvd., in East Austin, Texas was the epicenter for Defendants' fraudulent actions. Austin County, Texas is the proper venue and jurisdiction for this lawsuit.  28 U.S.C. § 1391.

## FACTS

**I.     Initial Investment into the Austin Property**

22.     Mr. White through his company Zen Garden LP, was engaged in developing the Austin Property into a 110-acre, mixed use, state-of-the-art campus slotted to include offices, hotels and other retail space, built using "green technology" and renewable energy resources.

23.     The property promised to be an exciting and profitable investment for Mr. White and his company.

24.     Prior to Mr. White and Zen Garden's involvement in the development of the Austin Property, Defendant Romspen owned and managed the property's development.

25.     Mr. White had previously dealt with Defendant Romspen, being aware of Defendant's reputation as a lender and real estate investor.

26.     Defendant Romspen held themselves out to the public, including to Mr. White, as an experienced lender with a history of success in lending and investing.

27.     At all times relevant, Mr. White relied on Defendant Romspen's publicly advertised expertise and experience as a disciplined and ethical investor/lender, in making decisions that affected himself, Zen Garden, and/or Mr. White's assets, with respect to any and all loan and/or credit facility transactions with Defendants.

28.     Mr. White came to rely on Defendant Romspen's statements and reputation as a lender accepting a loan from Romspen and designated the company as his trustee.

COMPLAINT

29.     In 2014, Defendant Romspen gained information that the Austin Property had recently been purchased for the nominal price of $5,000,000.00 USD, by a group of local investors planning to develop the property as an office and manufacturing space.

30.     When the investment group realized the property could not be immediately leased out the transaction failed and the Austin Property went back up for auction.

31.     Defendant Romspen, acting as a commercial and real estate investment and construction development entity, was attracted to the Austin Property and planned to purchase the property. In preparation, Defendant Romspen created MOS8 Partners Ltd (hereinafter "MOS8").

32.     Defendant Romspen has, at all times relevant, an economic interest in and/or directly or indirectly controlled MOS8.

33.     Defendant Romspen was presently acting as a fiduciary of Mr. White and his assets. Defendant Romspen did not report this conflict of interest when inducing Mr. White to invest in the Austin Property.

34.     In spite of the apparent conflict of interest, Defendant Romspen, simultaneously advised Mr. White on October 27, 2014:

    a.   The Austin Property was "perfect" for Mr. White;

    b.   Mr. White should use the un-advanced loan from Defendant Romspen to invest in MOS8 to purchase and enjoy the profits from the Austin Property; and/or

    c.   The Austin Property could be acquired for $5,000,000 to $7,000,000 USD.

35.     Defendants Romspen also provided written representations that Mr. White would be the benefactor of the investment, while Defendant Romspen would manage the development, leasing, and sales, acting as Mr. White's fiduciary.

COMPLAINT

36.     Defendant Romspen projected Mr. White and his assets world earn significant profits, approximately $100,000,000 within as little as two years.

37.     Defendant Romspen created a conflict of interest between Defendant Romspen, Mr. White, and Mr. White's assets due to Defendant Romspen's status as a trustee and its financial stake in MOS8, and its undisclosed intent to acquire the Austin Property.

38.     Mr. White and Zen Garden reasonably relied upon Defendant Romspen's advice agreeing to invest in MOS8 to develop the Austin Property.

39.     Mr. White would not have invested in MOS8 absent Romspen's advice and/or representations.

40.     On August 15, 2015, Mr. White and his assets entered into an investment commitment with MOS8 to gain an interest in the Austin Property.

41.     MOS8 purchased the Austin Property for $13,000,000 USD on September 30, 2015. Far over the estimated $5,000,000 to $7,000,000 price estimated by Defendant Romspen to Mr. White originally.

42.     Defendant Romspen through MOS8, purchased the Austin Property with Mr. White's investment and credit finances.

## II.     Defendants Milam's and Defendant Romspen's Mismanagement, Looting and Failure to Develop the Austin Property

43.     To control MOS8's development over the Austin Property Defendants, Romspen placed Defendant Milam, their own representative, in charge of the Property's development.

44.     Defendant Milam was granted ownership interest in MOS8 without Mr. White's knowledge, further deepening the conflicts of interest present.

45.     Defendant Milam failed to effectively, manage, control or perform his duties to MOS8 in the development of the Austin Property.

46.     Defendant Milam failed to act competently and effectively in the following ways including but not limited to;

      a.     Failing to completely plan the development;

      b.     Failing to competently supervise the construction;

      c.     Failing to disclose relevant knowledge of the financial matters related to the Austin Property;

      d.     Allowing $3,000,000 to $7,000,000 USD worth of industrial equipment and materials to be removed from the Austin Property without authorization;

      e.     Colluding with Defendants Romspen to unlawfully remove, sell, and convert materials from the Austin Property;

      f.     Attempting to convert the Austin Property into an unauthorized data center;

      g.     Failing to complete a $1,000,000 land sale to Austin Transport Authority;

      h.     Failing to lease buildings, parking spaces or other areas to generate revenue;

      i.     Failing to sub divide non-core areas and parcels to generate substantial revenue;

47.     Mr. Milan failed to deal fairly or act honestly in good faith to the best interest of Mr. White and his assets, while acting as Mr. White's fiduciary.

48.     At all times relevant Defendants knew or should have known of Defendant Milam's negligent, reckless and fraudulent acts as manager of MOS8.

49.     As a result of Defendant Milam's failures and Defendants Romspen's failure to terminate Defendant Milam, the Austin Property was never developed.

50.     When Mr. White learned of Defendant Milan's conduct, he demanded his investment be returned but Defendant Romspen threatened to foreclose the property and effectively sink any remaining funds out of Mr. White's reach, driving Mr. White further into Defendant's "loan to own" scheme.

COMPLAINT

### III.   MOS8's Default and Stage Two of Defendant Romspen's Plan to Seize Control of the Austin Property

51.   MOS8 purported to default despite Defendant Romspen claiming they had advanced MOS8 $35,000,000.00 CAD.

52.   Despite the considerable funds Defendants claimed to have invested in the development of the Austin Property there was no evidence of any material construction progress on the site.

53.   These losses do not even contemplate the losses by Mr. White and his assets, who contributed millions to the development project.

54.   Defendant Romspen offered a solution by granting Mr. White further loans to invest purchasing the Austin property from MOS8 and bringing Mr. White's company Zen Garden deeper into the pit.

### IV.   Zen Garden as the Developer and the Insertion of Defendant Zarafshani as Defendant Romspen's Inside Project Saboteur

55.   In July 2016, Defendant Romspen created a $40,000,000 loan to Zen Garden to complete the development of the Austin Property.

56.   However, Defendant Romspen had not abandoned their plan to loot and convert the investments into the Austin Property.

57.   As part of the loan agreement Mr. White and his assets assumed MOS8's debt, while Defendant's Romspen reaped even more origination and administrative fees for performing the loan where they controlled MOS8.

58.   From November 2016, Mr. White and his assets continued to invest in the Austin Property with the vision of creating an environmentally sustainable plan incorporating green technology and renewable energy.

9

COMPLAINT

59.     During 2017, Mr. White visited the Austin Development and was approached by Defendant Zarafshani, who introduced himself as a "scrap buyer."

60.     Defendant Zarafshani claimed to be a local developer who owned Defendant Panache, a local construction company, and was familiar with local construction and development.

61.     Defendant Zarafshani sought to persuade Mr. White that Defendant Panache would be indispensable in the development of the Austin Property.

62.     Defendant Zarafshani attempted to induce a contract by falsely and misleadingly representing statements including but not limited to:

   a.     Defendant Zarafshani possessed the requisite skills to be Mr. White's trustee.

   b.     Defendant Zarafshani possessed sufficient skill and resources to serve as an officer or director of one or more of Mr. White's assets.

   c.     Panache possessed the skill and resources necessary to ensure timely development of the Austin Property within proposed budgetary guidelines.

   d.     Panache could use its experience in local construction to secure more favorable loan terms from Defendants Romspen.

   e.     Panache could ensure timely construction draws from Defendant Romspen.

63.     Mr. White came to rely upon Defendant Zarafshani and Defendant Panache's representations as real estate developers and experienced players in the local construction industry, and hired Panache as the General contractor of the Austin Property Development.

64.     In response to the false or misleading representations by Defendant Zarafshani, Mr. White also appointed Defendant Zarafshani to become director of Mr. White's assets and serve as his trustee.

65.     Mr. White and Zen Garden at all times relevant relied on Defendant Zarafshani and Defendant Panache to manage the business affairs and the development of the Austin Property.

COMPLAINT

66.     Meanwhile Defendant Romspen eagerly awaited an opportunity for Zen Garden to default, providing Romspen the ability to directly acquire the Austin Property, fulfilling the "loan to own" scheme.

67.     On February 1, 2018 Defendant Romspen committed to lend Zen Garden an additional $125,000,000.

68.     Defendant Zarafshani conducted loan negotiations on behalf of Zen Garden at the insistence of Defendants Romspen.

69.     Defendant Romspen insisted on granting a larger interest in Zen Garden to Defendant Zarafshani.

70.     Defendant Zarafshani and Defendant Romspen improperly colluded during the loan negotiations in breach of their fiduciary duties to Mr. White and his assets.

71.     Defendant Zarafshani went on to act as Defendant Romspen's puppet within Zen Gardens, intentionally sabotaging the development.

72.     Unsurprisingly, the second loan agreement to Zen Garden negotiated by Defendant Zarafshani contained exorbitant loan fees and interest rates benefiting Defendant Romspen.

73.     The loan further required great overcollateralization between the Austin Property and other of Mr. White's assets in Canada worth in excess of $260,000,000 USD.

74.     Following the signing of the loan, Defendant Romspen intentionally or recklessly delayed and failed to make requisite disbursements to stall and sabotage the development of the Austin Property.

75.     Defendants conspired to engineer a fraudulent loan scheme to force Mr. White and Zen Garden to default on payments on the Austin Property, with the intent to purchase the property at a discounted foreclosure rate.

COMPLAINT

76.     In furtherance of the conspiracy, Defendants Romspen consistently and unreasonably denied Mr. White and Zen Garden's draw requests on the loan.

77.     Defendant Romspen demanded Zen Garden hire an additional third-party general contractor BTY US LLC to oversee the Austin property in order to consider receiving the loan draws.

78.     This request forced Zen Garden to employ two general contractors simultaneously further delaying and confounding the development of the Austin Property.

79.     Defendant Romspen continued their efforts to force Zen Garden into default by fraudulently interfering with Zen Garden's marketing and lease negotiations with third parties.

80.     Defendant Romspen falsely asserted to third parties it had unilateral authority to deny or honor any draw request by Zen Garden, engaged with potential tenants falsely holding itself out as having authority to contract with potential lessors, and met with Zen Garden's brokers disrupting marketing efforts.

81.     Defendant Romspen funded eleven of the sixteen draw requests by Zen Garden late.

82.     Defendants' cumulative effort to cause scheduling delays, late funding, interference with lessors, interference with marketing, and false assertions were calculated to drive Zen Garden into default.

83.     Defendants Romspen interfered with and prevented Mr. White and Zen Garden from securing a Property Assessed Clean Energy Act loan from the Texas government.

84.     On August 16, 2019 Defendant Romspen stated it intended to limit Zen Garden's loan to $102,000,000 instead of the agreed upon $125,000,000.

85.     Defendant Romspen proceeded to issue of a series of knowingly false allegations of Zen Garden's default.

12

COMPLAINT

86.     On October 7, 2019 Defendant Romspen attempted to coerce Zen Garden's to sign a "Forbearance Agreement." demanding Zen Garden admit default and release Romspen from any loan obligations.

87.     On October 9, 2019 Mr. White and Zen Garden issued a notice of Default to Defendant Romspen.

## V.     Post Default Consequences

88.     Defendant Romspen continued to attempt to coerce Mr. White and Zen Garden into signing a Forbearance agreement.

89.     Defendant Zarafshani also attempted to coerce and threaten Mr. White into accepting a settlement with Defendant Romspen, by physically threatening Mr. White and assaulting him with a metal bar when Mr. White rejected the settlement offer.

90.     Defendant Romspen refused to honor the loan agreement with Zen Garden resulting in Zen Garden declaring bankruptcy and the loss of the Austin Property.

91.     When the Austin Property was put up for auction Defendants Zarafshani and Romspen individually or through representative agents issued false statements on the property's value and conditions to drive away potential bidders.

92.     Defendants Romspen and Zarafshani both issued stories in Texas newspapers disparaging the Austin Development and Mr. White in an attempt to further drive down the auction price.

93.     As a result of Defendant's false statements, a reasonable bid offer was never received for the project.

94.     Mr. White and his assets suffered irreparable damage to their image as well as significant financial losses due to the collapse of the Austin Property's development.

13

COMPLAINT

## CAUSES OF ACTION

95.     Each of the allegations is made against Defendants both individually and in their capacity as employees and representatives of Romspen Investment Corporation and Panache Construction and Development respectively.

### First Cause of Action Fraud
### (Against Romspen)

96.     The allegations asserted in paragraphs 1-95 above are realleged here.

97.     Defendant Romspen never intended to perform its obligations under the loan agreements to fund the development of the Austin Property.

98.     Instead, Defendant Romspen planned a "loan to own" scheme to acquire the Austin Property for pennies on the dollar while lining its pockets with fees and interest payments from Mr. White and his assets.

99.     Defendant Romspen made knowingly false representations to Mr. White to induce Mr. White to contract with Defendants.

100.    Defendant Romspen acted with intent to sabotage the development of the Austin Property in order to induce a default by Mr. White and his entities, allowing Defendant Romspen to acquire the property at a discounted rate while also collecting fees from Mr. White. Defendant Romspen committed the following but not exhaustive list of acts in furtherance of the fraud.

   a.   Concealing Defendant Romspen's interest in the Austin Property.

   b.   Concealing Defendant Romspen's financial ties and interest to MOS8.

   c.   Intentionally misrepresenting the price of the Austin Property in inducing Mr. White to invest.

   d.   Permitting and concealing Defendant Milam's looting of construction supplies from the Austin Property.

14

COMPLAINT

e.  Engaging in collusive negotiations with Defendant Zarafshani resulting in increased loan rates to Zen Garden and awarding an interest in Zen Garden to Defendant Zarafshani.

f.  Permitting and concealing Defendant Zarafshani's looting of the Austin Property.

g.  Misrepresenting the financial situation of MOS8.

h.  Fraudulently denying Zen Garden's draw requests on loans.

i.  Fraudulently lowering the loan cap to Zen Garden at a crucial stage of development.

j.  Unjustly interfering with Mr. White and Zen Garden's efforts to secure a PACE Act loan for the development of the Austin Property.

k.  Falsely claiming Zen Garden misappropriated loan funds.

l.  Falsely representing the condition of the Austin Property while the property was for auction in an attempt to drive away interested buyers or lessors.

101.   Defendant committed the fraud acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese Ltd. v. Chem. Waste Mgmt., Inc.*, 75 S.W.3d 593, 599 (Tex. App. 2002).

102.   Defendants proximately caused Mr. White to sustain damages, including, but not limited to, the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

## Second Cause of Action Fraud
## (Against Milam)

103.   The allegations asserted in paragraphs 1-102 above are realleged here.

104.   Defendant Milam never intended to perform his duties as a project manager of the Austin Property under the employ of MOS8.

COMPLAINT

105.    Defendant Milam instead intended to loot the Austin Property, consistently failing to perform his duties to develop the property and allowing for materials, equipment, and scrap to be taken from the property without authorization.

106.    Defendant Milam made consistent false statements to Mr. White and his entities to continue Defendant Milam's scheme of theft for the entire tenure of his position at the Austin Property.

107.    Defendant Milam was aware of and contributed to Defendant Romspen's fraudulent scheme to sabotage the development of the Austin Property in order to induce a default by Mr. White and his entitles, allowing Defendant Romspen to acquire the property at a discounted rate while also collecting with fees from Mr. White.

108.    Defendant committed the fraud acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese*, 75 S.W.3d at 599.

109.    Defendant Milam proximately caused Mr. White to sustain damages, including, but not limited to, the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendant's fraudulent conduct and statements.

### Third Cause of Action Fraud
### (Against Zarafshani and Panache)

110.    The allegations asserted in paragraphs 1-109 above are realleged here.

111.    Defendant Zarafshani never intended to perform his duties as general contractor of the Austin Property under the employ of Zen Garden and Mr. White.

112.    Defendant Zarafshani at all times relevant was the principal, officer and/or director, as well as the controlling interest and/or shareholder, decision maker, agent, servant, employee, manager, and/or other representative of Defendant Panache.

16

COMPLAINT

113.    Defendant Zarafshani's actions in relation to the Austin Property can be imputed to Defendant Panache.

114.    Defendants Zarafshani and Panache intended to loot the Austin Property, consistently failing to perform their duties to develop the property and allowing for materials, equipment, and scrap to be taken from the property without authorization.

115.    Defendants Zarafshani and Panache made consistent false statements to Mr. White and his entities to continue their scheme of theft for the entire tenure of their position at the Austin Property.

116.    Defendants Zarafshani and Panache were aware of and contributed to Defendant Romspen's fraudulent scheme to sabotage the development of the Austin Property in order to induce a default by Mr. White and his entitles, allowing Defendant Romspen to acquire the property at a discounted rate while also collecting with fees from Mr. White.

117.    Defendants Zarafshani and Panache conspired with Defendant Romspen in the second loan negotiations on behalf of Zen Garden. Defendants Zarafshani and Panache while purporting to represent Mr. White, his entities and Zen Garden instead conspired with Defendant Romspen to impose high interest rates and additional fees on Mr. White and Zen Garden.

118.    Defendants Zarafshani and Panache further committed acts of fraud by unilaterally reaching out to potential buyers and lessors of the Austin property and making false statements about the conditions of the Austin Property.

119.    These false statements regarding negative aspects of the Austin Property were calculated to drive interested parties away from the Austin Property and satisfy Defendant Romspen's goal of acquiring the property on a low bid.

COMPLAINT

120.    Defendant committed the fraud acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese*, 75 S.W.3d at 599.

121.    Defendants Zarafshani and Panache proximately caused Mr. White to sustain damages, including, but not limited to, the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendant's fraudulent conduct and statements.

### Fourth Cause of Action Conspiracy to Commit Fraud
### (Against All Defendants)

122.    The allegations asserted in paragraphs 1-121 above are realleged here.

123.    Defendant Romspen never intended to perform its obligations under the loan agreements to fund the development of the Austin Property.

124.    Instead, Defendant Romspen planed a "loan to own" scheme to acquire the Austin Property for pennies on the dollar while lining its pockets with fees and interest payments from Mr. White and his entities.

125.    Defendant Romspen made knowingly false representations to Mr. White to induce Mr. White to contract with Defendants.

126.    Defendant Romspen acted with intent to sabotage the development of the Austin Property in order to induce a default by Mr. White and his entities, allowing Defendant Romspen to acquire the property at a discounted rate while also collecting with fees from Mr. White. Defendant Romspen committed the following but not exhaustive list of acts in furtherance of the fraud.

     a.   Concealing Defendant Romspen's interest in the Austin Property.

     b.   Concealing Defendant Romspen's financial ties and interest to MOS8.

    c.   Intentionally misrepresenting the price of the Austin Property in inducing Mr. White to invest.

    d.   Permitting and concealing Defendant Milam's looting of construction supplies from the Austin Property.

    e.   Engaging in collusive negotiations with Defendant Zarafshani resulting in increased loan rates to Zen Garden and awarding an interest in Zen Garden to Defendant Zarafshani.

    f.   Permitting and concealing Defendant Zarafshani's looting of the Austin Property.

    g.   Misrepresenting the financial situation of MOS8.

    h.   Fraudulently denying Zen Garden's draw requests on loans.

    i.   Fraudulently lowering the loan cap to Zen Garden at a crucial stage of development.

    j.   Unjustly interfering with Mr. White and Zen Garden's efforts to secure a PACE Act loan for the development of the Austin Property.

    k.   Falsely claiming Zen Garden misappropriated loan funds.

    l.   Falsely representing the condition of the Austin Property while the property was for auction in an attempt to drive away interested buyers or lessors.

127.    Defendants collectively were aware of and participated in the conspiracy engineered by Defendant Romspen to defraud Mr. White and his assets by inducing the bankruptcy of the Austin Development.

128.    Defendants committed the fraud acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese*, 75 S.W.3d at 599.

129.    Defendants proximately caused Mr. White to sustain damages, including, but not limited to, the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

### Fifth Cause of Action Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1961 et seq. (Against All Defendants)

130.    The Racketeering, Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961-1968, creates a civil cause of action under section 1964(c) against those injured by violations of section 1962(a)-(d)." *Delta Truck & Tractor, Inc. v. J.I. Case Co*., 855 F.2d 241, 242 n.1 (5th Cir. 1988).

131.    A claim for civil RICO claims has 3 common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Holliday v. Bank of Am.*, N.A., No. SA-11-CV-1133-XR, 2013 WL 1704905, at *3 (W.D. Tex. Apr. 19, 2013).

132.    "'Racketeering activity' is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).

133.    A pattern of racketeering activity "consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." A*braham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

134.    An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

135.    To demonstrate a civil RICO conspiracy, a claimant must show that: "(1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012).

20

COMPLAINT

136.     Defendants Romspen, Milam, Zarafshani, and Panache are a group of persons or entities who associated together for the common purposes of engaging in a course of conduct of defrauding Mr. White to profit from the Austin Property.

137.     The Defendants engaged in a conspiracy and agreed to defraud Mr. White to profit from the Austin property.

138.     The Defendants collectively engaged in a pattern of racketeering activity, that is conspiracy, mail and wire fraud in violation of federal law.

    a.   Mail and wire fraud claims require: (1) a scheme to defraud; (2) the use of mails or, if by wire, the interstate use of the wires to execute the scheme; (3) the use of mails or wires being incident to the essential execution of the scheme; and (4) actual injury to the plaintiff. *See Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 428 (5th Cir. 1990); *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997).

    b.   Defendants conspired to use the mail and wires, the internet, predominantly email, to defraud Dan White.

    c.   Defendants communicated with Mr. White via email and mail which was sent across state and international lines, to Mr. White's residence in Canada.

    d.   Defendant's pattern of racketeering was done for the sole purposes of defrauding Mr. White. These fraudulent communications and omissions include:

        i.    Falsely claiming Zen Garden misappropriated loan funds.

        ii.   Falsey representing the condition of the Austin Property while the property was for auction in an attempt to drive away interested buyers or lessors.

        iii.  Concealing Defendant Romspen's interest in the Austin Property while acting as trustee for Mr. White.

        iv.   Concealing Defendant Romspen's financial ties and interest to MOS8 while acting as trustee for Mr. White.

COMPLAINT

v.     Intentionally misrepresenting the price of the Austin Property in inducing Mr. White to invest.

vi.    Permitting and concealing Defendant Milam's looting of construction supplies from the Austin Property.

vii.   Engaging in collusive negotiations with Defendant Zarafshani resulting in increased loan rates to Zen Garden and awarding an interest in Zen Garden to Defendant Zarafshani.

viii.  Permitting and concealing Defendant Zarafshani's looting of the Austin Property.

ix.    Misrepresenting the financial situation of MOS8.

139.   The Defendants have not been held criminally or civilly liable for their violations of federal or state law and pose a continued threat of illegal conduct and criminal activity.

## Sixth Cause of Action Breach of Fiduciary Duty
### (Against Romspen)

140.   The allegations asserted in paragraphs 1-139 above are realleged here.

141.   A special relationship existed between Mr. White and Defendant Romspen which included fiduciary duties owed to Mr. White by Defendants. *Slay v. Burnett Trust*, 187 S.W.2d 377 (Tex. 1945) (fiduciary cannot gain any benefit for himself at expense of his beneficiary).

142.   By engaging in the foregoing acts, Defendant Romspen breached their fiduciary duty.

143.   By reaping the concealed profits of self-dealing in this case there is a presumption of unfairness on part of the Defendants. *Tex. Bank & Trust*, 595 S.W.2d at 509; *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 260-61 (Tex. 1974).

144.   Defendant Romspen's breaches of fiduciary duty caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin

COMPLAINT

Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

145.    Defendant committed the breach of fiduciary duty acting willfully, intentionally, or with malice, warranting punitive damages. *Bright v. Addison*, 171 S.W.3d 588, 604 (Tex. App. 2005).

## Seventh Cause of Action Breach of Fiduciary Duty
### (Against Milam)

146.    The allegations asserted in paragraphs 1-145 above are realleged here.

147.    A special relationship existed between Mr. White and Defendant Milam which included fiduciary duties owed to Mr. White by Defendants. *Slay v. Burnett Trust*, 187 S.W.2d 377 (Tex. 1945) (fiduciary cannot gain any benefit for himself at expense of his beneficiary).

148.    By engaging in the foregoing acts, Defendant Milam breached their fiduciary duty.

149.    By reaping the concealed profits of self-dealing in this case there is a presumption of unfairness on part of the Defendants. *Tex. Bank & Trust*, 595 S.W.2d at 509; *Stephens County Museum, Inc.*, 517 S.W.2d at 260-61.

150.    Defendant Milam's breaches of fiduciary duty caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendant's fraudulent conduct and statements.

151.    Defendant committed the breach of fiduciary duty acting willfully, intentionally, or with malice, warranting punitive damages. *Bright*, 171 S.W.3d at 604.

## Eighth Cause of Action Breach of Fiduciary Duty
### (Against Zarafshani and Panache)

152.    The allegations asserted in paragraphs 1-151 above are realleged here.

153.     A special relationship existed between Mr. White and Defendants Zarafshani and Panache, which included fiduciary duties owed to Mr. White by Defendants. *Slay v. Burnett Trust*, 187 S.W.2d 377 (Tex. 1945) (fiduciary cannot gain any benefit for himself at expense of his beneficiary).

154.     By engaging in the foregoing acts, Defendants Zarafshani and Panache breached their fiduciary duty.

155.     By reaping the concealed profits of self-dealing in this case there is a presumption of unfairness on part of the Defendants. *Tex. Bank & Trus*t, 595 S.W.2d at 509; *Stephens County Museum, Inc.*, 517 S.W.2d at 260-61.

156.     Defendants Zarafshani and Panache's breaches of fiduciary duty caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendant's fraudulent conduct and statements.

157.     Defendant committed the breach of fiduciary duty acting willfully, intentionally, or with malice, warranting punitive damages. *Bright*, 171 S.W.3d at 604.

### <u>Ninth Cause of Action Breach of Duty of Good Faith and Fair Dealing<br>(Against All Defendants)</u>

158.     The allegations asserted in paragraphs 1-157 above are realleged here.

159.     A special relationship existed between Mr. White and Defendants which included a duty of good faith and fair dealing owed to Mr. White by Defendants.

160.     By engaging in the foregoing acts, Defendants breached their duty of good faith and fair dealing.

COMPLAINT

161.    Defendants' breaches of the duty of good faith and fair dealing proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

162.    Defendant committed the breach of the duty of good faith and fair dealing by acting willfully, intentionally, or with malice, warranting punitive damages. *Bright*, 171 S.W.3d at 604.

### Tenth Cause of Action Breach of Contract
### (Against Defendant Romspen)

163.    The allegations asserted in paragraphs 1-162 above are realleged here.

164.    The loan agreements constitute a valid and enforceable contract between Mr. White and Defendant Romspen.

165.    Performance of the contract was tendered my Mr. White.

166.    Defendant Romspen breached the contract through the aforesaid acts and omissions, including but not limited to:

a.    Concealing Defendant Romspen's interest in the Austin Property.

b.    Concealing Defendant Romspen's financial ties and interest to MOS8.

c.    Intentionally misrepresenting the price of the Austin Property in inducing Mr. White to invest.

d.    Permitting and concealing Defendant Milam's looting of construction supplies from the Austin Property.

e.    Engaging in collusive negotiations with Defendant Zarafshani resulting in increased loan rates to Zen Garden and awarding an interest in Zen Garden to Defendant Zarafshani.

f.    Permitting and concealing Defendant Zarafshani's looting of the Austin Property.

COMPLAINT

g.    Misrepresenting the financial situation of MOS8.

h.    Fraudulently denying Zen Garden's draw requests on loans.

i.    Fraudulently lowering the loan cap to Zen Garden at a crucial stage of development.

j.    Unjustly interfering with Mr. White and Zen Garden's efforts to secure a PACE Act loan for the development of the Austin Property.

k.    Falsely claiming Zen Garden misappropriated loan funds.

l.    Falsely representing the condition of the Austin Property while the property was for auction in an attempt to drive away interested buyers or lessors.

167.    Defendants' breaches of contract proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

168.    Moreover, under Chapter 38 of the Texas Civil Practice & Remedies Code Plaintiff is entitled to reasonable attorneys' fees in bringing this action.

## Eleventh Cause of Action Breach of Contract
### (Against Defendant Milam)

169.    The allegations asserted in paragraphs 1-168 above are realleged here.

170.    The development contract for Mr. Milam to serve as general contractor of the Austin Property constitutes a valid and enforceable contract between Mr. White and Mr. Milam.

171.    Performance of the contract was tendered my Mr. White.

172.    Defendant Milam breached the contract through the aforesaid acts and omissions, including but not limited to:

a.    Failure to develop the Austin Property;

       b.      Failure to follow the prescribed timetable for development of the Austin Property;

       c.      Permitting materials, equipment, and scrap to be removed from the Austin Property and be sold without authorization.

173.    Defendant's breaches of contract proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements. *Smith Int'l, Inc.*, 490 F.3d at 387.

174.    Moreover, under Chapter 38 of the Texas Civil Practice & Remedies Code Plaintiff is entitled to reasonable attorneys' fees in bringing this action.

## Twelfth Cause of Action Breach of Contract
### (Against Defendant Zarafshani and Panache)

175.    The allegations asserted in paragraphs 1-174 above are realleged here.

176.    The development contract for Mr. Milam and his company Panache to serve as general contractor of the Austin Property constitutes a valid and enforceable contract between Mr. White and Defendants Zarafshani and Panache.

177.    Defendant Zarafshani at all times relevant was the principal, officer and/or director, as well as the controlling interest and/or shareholder, decision maker, agent, servant, employee, manager, and/or other representative of Defendant Panache.

178.    Performance of the contract was tendered by Mr. White.

179.    Defendant Milam breached the contract through the aforesaid acts and omissions, including but not limited to:

       a.      Engaging in collusive negotiations with Defendant Romspen against the interests of Mr. White and Zen Garden, his employer.

b.      Failure to develop the Austin Property.

c.      Failure to follow the prescribed timetable for the development of the Austin Property.

d.      Permitting materials, equipment, and scrap to be removed from the Austin Property and be sold without authorization.

e.      Making false statements to potential lessors and buyers of the property to sabotage the bidding process and ensure Defendant Romspen was able to acquire the property at a greatly discounted rate.

180.    Defendants' breaches of contract proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements. *Smith Int'l, Inc.*, 490 F.3d at 387.

181.    Moreover, under Chapter 38 of the Texas Civil Practice & Remedies Code Plaintiff is entitled to reasonable attorneys' fees in bringing this action.

## Thirteenth Cause of Action Negligence
## (Against All Defendants)

182.    The allegations asserted in paragraphs 1-181 above are realleged here.

183.    Defendants owed Mr. White a duty of care in advising Mr. White on the development, progress, health, and status of the Austin Property. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996).

184.    Defendants breached that duty of reasonable care by consistently supplying Mr. White with false information in the furtherance of their own financial interest. These false statements include but are not limited to:

a.      False representations regarding the Austin Property's value.

b.      False representations regarding the progress being made towards the development of the Austin Property.

COMPLAINT

      c.      False representations regarding the time remaining before the Austin Property would be available for lease.

      d.      False representations concerning the potential cost of necessary developments to the Austin Property.

185.    Defendants had no reasonable grounds to believe the false information supplied to Mr. White acting with intent to supply false information or with reckless disregard of the truth.

186.    Mr. White justifiably relied on the false information supplied by Defendants.

187.    Defendants committed gross negligence by acting willfully, intentionally, or with malice, warranting punitive damages. *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 319 (Tex. App. 2004).

188.    Defendants' negligence proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

### Fourteenth Cause of Action Negligent Misrepresentation
### (Defendant Romspen)

189.    The allegations asserted in paragraphs 1-188 above are realleged here.

190.    Defendant Romspen made the aforementioned representations to Mr. White to induce Mr. White to commit to continuous business relationships with Defendant for Defendant's financial gain.

191.    Defendant Romspen is in the business of and holds itself out as a reliable supplier of information to guide investors like Mr. White on real estate investments.

COMPLAINT

192.    Defendants owed a reasonable duty of care in advising Mr. White on the development, progress, health, and status of the Austin Property. *Firestone Steel Prods. Co.*, 927 S.W.2d at 613.

193.    Defendants breached that duty of reasonable care by consistently supplying Mr. White with false information in the furtherance of their own financial interest.

194.    Defendants had no reasonable grounds to believe the false information supplied to Mr. White acting with intent to supply false information or with reckless disregard of the truth.

195.    Mr. White justifiably relied on the false information supplied by Defendants.

196.    Defendant committed grossly negligent misrepresentations by acting willfully, intentionally, or with malice, warranting punitive damages *Ford Motor Co.*, 141 S.W.3d at 319.

197.    Defendants' negligence proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

### Fifteenth Cause of Action Negligent Misrepresentation
### (Defendant Zarafshani and Panache)

198.    The allegations asserted in paragraphs 1-197 above are realleged here.

199.    Defendants Zarafshani and Panache made the aforementioned representations to Mr. White to induce Mr. White to appoint Defendant the general contractor of the Austin Property for Defendant's financial gain.

200.    Defendant Zarafshani is in the business of and holds himself out as a reliable contractor and developer in the Austin area.

201.    Defendants owed a reasonable duty of care in advising Mr. White on the development, progress, health, and status of the Austin Property, as well as Defendant's progress

and capabilities to fulfill the terms of the development. *Firestone Steel Prods. Co.*, 927 S.W.2d at 613.

202.    Defendants breached that duty of reasonable care by consistently supplying Mr. White with false information in the furtherance of their own financial interest.

203.    Defendants had no reasonable grounds to believe the false information supplied to Mr. White acting with intent to supply false information or with reckless disregard of the truth.

204.    Mr. White justifiably relied on the false information supplied by Defendants.

205.    Defendants committed gross negligent representations by acting willfully, intentionally, or with malice, warranting punitive damages *Ford Motor Co.*, 141 S.W.3d at 319.

206.    Defendants' negligence proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

### <u>Sixteenth Cause of Action Deceptive Trade Practices Act Violations<br>(All Defendants)</u>

207.    The allegations asserted in paragraphs 1-206 above are realleged here.

208.    Defendants violated the Deceptive Trade Practices Act False, by committing misleading, or deceptive acts or practices in the conduct of any trade or commerce. Tex. Bus. & Com. Code § 17.46.

209.    Mr. White justifiably relied on these misleading and deceptive acts.

210.    Mr. White suffered actual damages as a result of his reliance on Defendants' unlawful acts.

211.    Defendants committed the fraud, and deceptive trade acts by acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese*, 75 S.W.3d at 599.

COMPLAINT

212.    Defendants' unlawful acts proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

## Seventeenth Cause of Action Aiding and Abetting

213.    The allegations asserted in paragraphs 1-212 above are realleged here.

214.    Defendants collectively acted with unlawful intent and gave substantial assistance and encouragement their fellow Defendants in the commission of the aforementioned tortious acts. *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W. 3d 917, 921 (Tex. App. 2014).

215.    Defendants committed numerous overt acts in furtherance of their conspiracy to defraud Mr. White, including but not limited to;

     a.    Concealing Defendant Romspen's interest in the Austin Property.

     b.    Concealing Defendant Romspen's financial ties and interest to MOS8.

     c.    Defendant Romspen misrepresenting the price of the Austin Property in inducing Mr. White to invest.

     d.    Defendant Milam's looting of construction supplies from the Austin Property.

     e.    Defendant Zarafshani's collusive negotiations with Defendant Romspen resulting in increased loan rates to Zen Garden and awarding an interest in Zen Garden to Defendant Zarafshani.

     f.    Defendant Zarafshani's looting of the Austin Property.

     g.    Defendant Romspen's misrepresentation of the financial situation of MOS8.

     h.    Fraudulently denying Zen Garden's draw requests on loans.

i.     Fraudulently lowering the loan cap to Zen Garden at a crucial stage of development.

j.     Defendant Romspen's unjust interference with Mr. White and Zen Garden's efforts to secure a PACE Act loan for the development of the Austin Property.

k.     Defendant Romspen falsely claiming Zen Garden misappropriated loan funds.

l.     Defendants Romspen and Zarafshani's false representations of the condition of the Austin Property while the property was for auction in an attempt to drive away interested buyers or lessors.

216.   Mr. White suffered actual damages as a result of his reliance on Defendants' unlawful acts.

217.   Defendants committed the tortious acts acting willfully, intentionally, or with malice, warranting punitive damages. *See Celanese*, 75 S.W.3d at 599.

218.   Defendants' unlawful acts proximately caused Mr. White to sustain damages, including, but not limited to the potential loss of sustainable equity invested in the Austin Property, the loss of funds used to cover the denied draws, construction delays, interest charges, and damages to professional image, based on Defendants' fraudulent conduct and statements.

WHEREFORE, Plaintiff Mr. White states that he has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for his costs herein expended, and for such other relief as the Court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. White states that he has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as

COMPLAINT

punitive damages which is just, fair, and adequate under the circumstances and for his costs herein expended, and for such other relief as the Court deems just.

Plaintiff Mr. White also prays for damages as follows:

i.    An award of compensatory, special and punitive damages in appropriate amounts to be established at trial;

ii.   An award of reasonable attorneys' fees;

iii.  An award of costs associated with this action;

iv.   An award of pre and post-judgment interest and costs;

v.    And such other and further relief as the Court may deem just and proper.

JURY DEMAND Plaintiff demands a trial by jury on all issues so triable.

Date: June 14, 2021                         Respectfully Submitted,


By: */s/ Leanna M. Anderson*
Leanna M. Anderson
State Bar No. 24085833
Dentons US LLP
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201-1858
Telephone:  (214) 259-0900
Fax:  (214) 259-0910
*leanna.anderson@dentons.com*

John M. Pierce
*Pro Hac Vice Application to be filed*
Pierce Bainbridge P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071
Telephone:  (213) 400-0725
*jpierce@piercebainbridge.com*

***Attorneys for Plaintiff Daniel White***

118413619

34

COMPLAINT